In re APPLICATION OF THE COUNTY TREASURER AND EX-OFFICIO COUNTY COLLECTOR OF COOK COUNTY.—(MID-AMERICA INVESTMENT CORPORATION, Petitioner-Appellee, v. LARRY CORPORATION, Respondent-Appellant.)

(No. 58105; )

First District (2nd Division)—September 25, 1973.

Allan L. Blair, of Chicago, for appellant.

George A. Hodges and Nathan Slutzky, both of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Petitioner, tax purchaser of Lot 56 in Elmore's Hickory Heights, a subdivision in Palos township, brought an action to set aside the respondent's redemption and to order the issuance of a tax deed for said lot, pursuant to section 266 of the Revenue Act of 1969, as amended (Ill. Rev. Stat. 1971, ch. 120, par. 747.) The trial court entered an order finding the redemption of respondent invalid and void and set the same aside. The trial court further denied respondent's motion for a new trial and respondent now appeals.

The question presented to this court is whether respondent had a sufficient interest in the subject property to entitle it to redeem from the tax sale in question.

Lot 56 was sold to petitioner on February 17, 1970, pursuant to the provision of the Revenue Act, for nonpayment of 1968 general real estate taxes. Since November 16, 1933 and at the date of the tax sale,

record title was held by The Trust Company of Chicago, as successor trustee to the People's Trust and Savings Bank of Chicago, as trustee under trust agreement dated April 26, 1926 and known as Trust No. 914. The record before this court indicates the following pertinent transactions as to Lot 56:

April 12, 1926—conveyance, by deed in trust, by Mervin J. Gorman to West Englewood Trust and Savings Bank. The property included in that conveyance was later subdivided into 435 lots of which the real estate in issue, Lot 56 in Elmore's Hickory Heights, was one.

Sept. 8, 1931—conveyance [1] by West Englewood Trust and Savings Bank to People's Trust and Savings Bank in Trust No. 914.

Nov. 13, 1933—conveyance [1] by People's Trust and Savings Bank Trust No. 914 to The Trust Company of Chicago as Successor Trustee (recorded Nov. 16, 1933).

1934-1967—real estate taxes and special assessments on Lot 56 paid by William H. and Lillian McDonnell.

1968—general real estate taxes on the property left unpaid.

Feb. 17, 1970—petitioner purchased Lot 56 at a tax sale pursuant to the Revenue Act.

Feb. 1, 1972—conveyance of Lot 56 by quit claim deed, and assignment to respondent of her beneficial interest in Trust No. 914 by Evelyn Korten (daughter of William and Lillian McDonnell).

Feb. 9, 1973—respondent deposited a sum of money with the County Clerk of Cook County as a redemption from the tax sale under the designation of "Larry Corp. assignee and grantee of Evelyn Korten, Heir at law of Lillian E. McDonnell deceased and William H. McDonnell deceased assessee and also beneficiaries of Trust Company of Chicago as successor Trustee under Trust Agreement dated March 12, 1926 and known as Trust # 914 and successor Trustee if and when appointed."

Petitioner thereafter filed its petition to set aside the redemption, alleging that Evelyn Korten had no legal interest in the real estate and therefore respondent obtained no legal interest which would entitle it to make a valid redemption. Correspondingly, at the hearing respondent attempted to account for the break in the chain of title between the conveyance to The Trust Company of Chicago as successor trustee and the conveyance by Evelyn Korten.

F. A. Hodges, president of petitioner, testified that The Trust Company

---

[1] The record does not describe the nature of the conveyance.

of Chicago had gone out of business and that Guaranty Trust Company and the LaSalle National Bank were the successors to its trust business.

Herbert Silton, president of respondent, testified that, upon his inquiry, the LaSalle National Bank informed him that anything not conveyed by The Trust Company of Chicago to the LaSalle National Bank or Guaranty Trust Company of Chicago had been previously sold and that Lot 56 was not in the conveyance to the LaSalle National Bank.

Emily Sawicki, the trust officer of Guaranty Bank and Trust Company of Chicago, testified that the Southmoor Bank and Trust Company (presently the Guaranty Bank and Trust Company) became the successor trustee to some trusts of The Trust Company of Chicago including Trust No. 914. Pursuant to respondent's subpoena, Ms. Sawicki presented the records of Trust No. 914, held in the custody of Guaranty Bank and Trust Company, but nothing in those records related to Lot 56. The court sustained petitioner's objection to the introduction of the records of Trust No. 914 into evidence. Respondent then made an offer of proof that Trust No. 914 was the wrong trust, which offer was not ruled on by the trial court.

Respondent proceeded to question Ms. Sawicki regarding a Trust No. 240. The witness had no knowledge as to the whereabouts of the records of that trust since its records had been closed by Guaranty's predecessor, The Trust Company of Chicago. Nonetheless, she presented a ledger of The Trust Company of Chicago which listed Trust No. 240. Upon petitioner's objection, the court would not permit any part of the entries in the ledger to be read into evidence. The court further sustained petitioner's objection to the admission of the ledger into evidence. Respondent subsequently made an offer of proof that Trust No. 240 held the property within the Hickory Hills [sic Heights] subdivision of Howard Elmore (of which Lot 56 was a parcel), that any records relating to ownership of the lots would be contained in the records, and that, since those records were not available, they were lost. The court then sustained petitioner's objection to that offer of proof.

Respondent further attempted to show delivery of a deed to the McDonnells and to account for their failure to record the contract of sale. Herbert Silton testified that, in researching the title to the property in question, he found articles of agreement on a lot in Elmhurst [sic Elmore's] Hickory Heights. Although these articles of agreement did not pertain to Lot 56, the witness ascertained that it was a type used by Elmhurst [sic Elmore] on all lots in Hickory Heights. The court sustained petitioner's objection to the testimony and to the introduction of the document into evidence on the ground that neither had any relation to the property in issue. Respondent explained that the docu-

ment would account for the failure of the McDonnells to record the contract of sale. Counsel for respondent then made an offer of proof that, if the document was allowed into evidence, it would reveal that an attempt to record the contract of sale would have rendered the contract void and that Howard Elmore's usual practice was to cause a BB Policy (of the Chicago Title and Trust Company) to be issued to a contract purchaser only upon delivery of the deed to that purchaser.

Eugene F. Hoffman, a bill adjustor-contract estimator for the Chicago Title and Trust Company,[2] brought with him to the hearing a BB Policy [3] issued to the McDonnells. He testified that the BB Policy guarantees the purchaser the seller's good title at a specific date and that the practice of the Chicago Title and Trust Company was to deliver the policy to the purchaser at the same time as the deed was delivered. Petitioner objected to the testimony on the ground that proof of the evidence of a lost deed by parol evidence requires the witness to establish that he saw and knows of the contents of the document. The court sustained the objection and further prevented the witness from testifying as to the contents of the BB Policy. Continuing his testimony, Mr. Hoffman stated that, in the usual course of business, Howard Elmore ordered a BB Policy from the Chicago Title and Trust Company pursuant to the sale of parcels within his subdivision; the court again sustained petitioner's objection that such testimony was irrelevant to proof of title.

Evelyn Korten testified that her parents, William and Lillian McDonnell, died in 1968 and 1970 respectively; that they paid taxes on the property; but that she had never seen a deed relating to the land in question. She recalled having gone to see the property with her parents, at which time they pointed it out as their own. Petitioner objected to any questions relating to the manner in which the McDonnells purchased the property, which objection the court sustained.

During the course of the hearing, respondent made an attempt to establish that the McDonnells had acquired an interest in the property through payment of taxes for 33 years by introducing certified copies of paid tax bills pursuant to section 733 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 733.) That statute provides that the records of the County Clerk, or certified copies thereof, constitute *prima facie* evidence

---

[2] This court will take judicial notice of the fact Chicago Title and Trust Company is in the business of insuring title to real property.

[3] The counterclaim filed by respondent alleges that on November 16, 1933 William H. McDonnell and Lillian E. McDonnell, his wife, obtained from Chicago Title and Trust Company Policy 2029767, Form BB in the amount of $895.00 covering the subject property. The court granted petitioner's motion to strike this (and other allegations in the counterclaim) on the theory (i) this was an attempt to plead evidence and (ii) the same was not competent to prove a legal interest in real estate.

of payment of taxes. Petitioner objected on the grounds that said records, not being original receipts, are not the best evidence; that evidence of payment of taxes is irrelevant and immaterial when establishing an interest in land and not a proper means of proving title to land when the deed is lost. Upon petitioner's objection, the court refused to admit the evidence and also sustained an objection to an offer of proof of tax payments for 33 years to show indicia of ownership. At the time, based on the record then before the trial court, the objection was properly sustained because there was no evidence that the McDonnells had either color of title to Lot 56 or had ever been in possession of the lot so that the then sole exception to the normal rule of the irrelevance of tax payments (namely, the potential for acquiring an original title under the provisions of the Illinois short statute of limitation (Ill. Rev. Stat. 1971, ch. 83, secs. 6 & 7)) was inapplicable. We note, however, that, as of the date of this opinion, the interim decision in *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill.2d 325, 291 N.E.2d 641 (referred to later on in this opinion), appears to have established a second exception by the application of the doctrine of *laches* in favor of a long-term taxpayer and against a record owner. This second exception may or may not be applicable to the McDonnells.

The record is silent as to (i) any document evidencing any interest in the real estate in William H. McDonnell, Lillian E. McDonnell or Evelyn Korten, and (i) any person having seen any such document. The evidence also established that the inventories and inheritance tax returns of the Estates of William H. McDonnell and Lillian E. McDonnell did not list Lot 56 as an asset.

Based on this evidence, the trial court sustained the tax purchaser's petition and set aside respondent's redemption.

The parties to this appeal suggest that the issue presented to this court is whether respondent can be properly classified as one entitled to redeem under Article IX, paragraph 8(b) of the Illinois Constitution of 1970 which provides:

> "The right of redemption from all sales of real estate for the non-payment of taxes or special assessments shall exist in favor of owners and persons interested in such real estate for not less than two years following such sales."

The phrase "persons interested" was considered in the case of *Weiner v. Jobst* (1961), 22 Ill.2d 11, 174 N.E.2d 561, the Supreme Court holding that where there is a break in the chain of title, prior to the conveyance of the subject property to a trust, its trustee may not redeem.

In *Franzen v. Donichy* (1956), 9 Ill.2d 382, 137 N.E.2d 825, the supreme court at page 387 said:

"While a mere stranger to the property has no right to redeem, it is enough if the person assuming to redeem has some *'interest'* therein, even though it does not amount to complete ownership. [Citation.] Redemptions are looked upon with favor, and unless injury is to result to the purchaser at the sale a liberal construction will be given redemption laws." (Emphasis supplied.)

And at page 388:

"One who seeks to establish the existence of a lost deed by parol testimony must bear the burden of making such proof in a clear and conclusive manner. Deeds are evidence of title, and if they are lost public policy demands that proof of their former existence be strong and conclusive."

In *Johnson v. Zahn* (1942), 380 Ill. 320, 44 N.E.2d 15, it was held that the equity of redemption may be transferred to a stranger after the foreclosure sale, and the stranger can redeem.

In *In re County Treasurer of Du Page County* (2d Dist. 1965), 63 Ill.App.2d 135, 211 N.E.2d 127, the court said at page 137:

"It is to be noted that while a stranger to the property may not redeem, the law does not require record title as a prerequisite of redemption."

And at pages 139-140:

"In determining the quality and quantity of interest necessary to permit redemption, we must have in mind that the law recognizes both a legal and equitable interest, looks with favor upon redemptions and gives a liberal construction to the redemption laws unless injury results thereby to the purchaser at the tax sale. Here, the plaintiff suffers no injury because the effect of the trial court's order reimburses him for his expenditures with interest."

In *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill.2d 325, 331, 291 N.E.2d 641, an action to quiet title to several vacant city lots, each defendant had paid, on their respective properties, general real estate taxes and special assessments for 40 years. Plaintiffs claimed record title to each property. The Supreme Court held "* * * by virtue of the payment of taxes for approximately 40 years by the defendants, the plaintiff should have been put on inquiry as to defendants' adverse claims and is now barred by *laches* from asserting any claims to the premises in question."

In the instant case there is no recorded conveyance from The Trust Company of Chicago as successor trustee of Trust No. 914 to Evelyn Korten, yet she purported to assign an alleged beneficial interest in Trust No. 914 and convey her interest in the subject property to respondent. Respondent therefore bore the burden of establishing that

William and Lillian McDonnell did in fact acquire an *interest* in the property.

It is respondent's theory of the case that all of the trust records for the record titleholder were either lost or destroyed and, accordingly, that it was necessary for respondent to show, through some form of secondary evidence, the existence of either an unrecorded deed or the beneficial interest in the land trust. Nonetheless, the record is replete with petitioner's objections to the admission into evidence of any testimony or document offered by the respondent on the grounds that such evidence was irrelevant and immaterial in proving *title* to land. Petitioner contends that the record of title, or of a conveyance, or the deed is the best evidence and must be produced and, in the absence of such evidence, only witnesses who have seen and read the deed may testify as to its contents.

■■ The law of this state clearly provides that secondary evidence is admissible to prove the existence and contents of a lost deed providing the party seeking to submit such evidence has laid the proper foundation setting out the circumstances of the loss or destruction of the deed. (Ill. Rev. Stat. 1971, ch. 116, pars. 27, 28.) In the instant case the court's rulings on petitioner's objections effectively precluded respondent from introducing evidence that the records of both the subdivider and the record titleholder were either lost or destroyed, that a BB Policy was issued to the McDonnells, that it was the acknowledged practice of the subdivider to have issued such a policy (as well as the practice of the Chicago Title and Trust Company to issue such a policy) only upon the delivery of a deed, and that the McDonnells had acquired an interest in the property by payment of real estate taxes for 33 successive years. Thus, the trial court reached its decision in the case without considering the evidence or, indeed, even the theory of respondent's case.

■■■ It is well established that each party to a law suit is entitled to present evidence which is relevant and material to his theory of the case. (*Haffa v. Haffa* (1st Dist. 1969), 115 Ill.App.2d 467, 474, 253 N.E.2d 507; *Schneider v. Kirk* (2d Dist. 1967), 83 Ill.App.2d 170, 180, 226 N.E.2d 655.) The fact that the testimony and documents which respondent sought to have admitted into evidence may not have conclusively proved that it had a redeemable interest in the property is not the proper standard to be utilized in determining the admissibility of evidence. Clearly in his *Handbook of Illinois Evidence* has defined relevant evidence as that evidence having

> "* * * a tendency to render a proposition in issue more or less probable, in the light of logic, experience, and accepted assumptions concerning human behavior." (Cleary, Handbook of Illinois Evidence, 2d Ed. (1963) at 206.)

It is apparent from its opinion in *Dill v. Widman* (1953), 413 Ill. 448, 109 N.E.2d 765 that the Illinois Supreme Court has adopted relevancy as the appropriate standard for admissibility of evidence. There the court stated at page 454:

> "All evidence tending to prove the material facts, or any of them, in a case is admissible, although it may not alone establish the whole case."

Also see *Marut v. Costello* (1966), 34 Ill.2d 125, 128, 214 N.E.2d 768.

■■ To prove its own redeemable interest in Lot 56, respondent had to establish certain material facts, namely the existence of a deed and its delivery to the McDonnells. The testimony and documents offered by respondent in its attempt to account for the records of Trust No. 914 and to demonstrate the subdivider's business practice of delivering a deed concurrently with the issuance of a BB Policy clearly constitute evidence tending to prove those facts. The trial court's refusal to admit such relevant material into evidence effectively barred respondent from presenting its theory of the case and constitutes reversible error.

In reaching our conclusion we are not in any degree diluting the well established evidentiary requirements for proof of title to real property. Likewise we are not suggesting that the respondent has any redeemable interest in Lot 56 in Elmore's Hickory Heights, since that must be determined in the light of all relevant evidence and applicable law. What weight is to be given to any of the evidence is for the trier of fact to determine. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

STAMOS, P. J., and HAYES, J., concur.