Ethel Haffa, Plaintiff-Appellant, v. Pauline Haffa, Dora Haffa, Mae Haffa, and American National Bank and Trust Company, as Trustee Under Its Trust No. 25191, Defendants-Appellees.

**Gen. No. 53,219.**

First District, Third Division.

October 16, 1969.

Samuel S. Cohon and Wexler & Wexler, of Chicago, for appellant.

Donald J. O'Brien, A. Edmund Peterson, Sheldon Rubin, Leonard Higley, and Robert W. Woodward, of Chicago (Leonard Higley, of counsel), for appellees.

MR. JUSTICE McNAMARA delivered the opinion of the court.

This was an action brought by plaintiff, Ethel Haffa, for a declaratory judgment declaring that her signature was forged on a certain deed and that said deed was void insofar as it purported to convey her interest in the subject property. The action also sought a declaration that all subsequent conveyances by the grantees of said deed, Pauline, Dora and Mae Haffa, were of no effect, including their conveyance to defendant, American National Bank and Trust Company, as Trustee. The defendant bank counterclaimed, asking the court to declare that it was the owner in fee simple of the subject property, and that plaintiff had no interest in said property. At the conclusion of its case, the bank obtained leave to amend its answer and counterclaim to include additional defenses and for general equitable relief.

The trial court entered a decree finding that Ethel Haffa had no interest of any nature in the said real estate and that the bank was the owner in fee simple of said property. The court also found that the deed, dated July 5, 1958, conveying title from Titus and Ethel Haffa to the Haffa sisters, was not a forgery, but a valid instrument which was executed by plaintiff's husband, Titus Haffa, on behalf of himself and his wife in accordance with the practice condoned and tacitly approved by plaintiff over many years. The court further found that plaintiff knew of the transfer of legal title and acquiesced in, adopted, ratified and acknowledged such transfer by numerous actions, and that the bank and its predecessors in title have been in adverse possession of said property under color of title acquired in good faith, and

during more than a seven-year period have paid taxes on said property. The court also found that, based on its observation and upon the inconsistencies of plaintiff's testimony, she was not a credible witness.

Plaintiff appeals, contending that certain documentary evidence was erroneously admitted without a showing of genuineness or valid execution; that defendants did not establish a course of conduct by plaintiff which would estop her from asserting the forgery; that the court abused its discretion in permitting the bank to amend its pleadings at the conclusion of the case; that defendants failed to prove their affirmative defenses; that adverse possession is not a defense against forgery; and that before possession of one cotenant can be adverse to a cotenant in common, there must be a disseizin or ouster.

The subject property, located at 1240 Lake Shore Drive, Chicago, was purchased by Titus and Ethel Haffa, husband and wife, as joint tenants on February 8, 1955. On June 9, 1958, a deed purportedly signed by Titus and Ethel Haffa and acknowledged by Charlotte Brostow, a notary public, conveyed the property to Pauline, Dora and Mae Haffa, sisters of Titus. Title was held by LaSalle National Bank as trustee for the sisters. The sisters lived in the building from 1957 until the time of this suit; Titus and plaintiff lived next door. Titus and plaintiff used space in the basement of the subject property for storage. On July 10, 1967, American National Bank and Trust Company, as trustee, purchased the property from the sisters. After the purchase by the bank, the sisters continued to live in the property by virtue of a lease.

Plaintiff testified that she did not sign the deed in question, and that she did not authorize anyone to sign it for her. An expert examiner of questioned documents testified that in his opinion the signature on the deed in question was not that of plaintiff.

Plaintiff testified that she paid $150,000 for the property. It was brought out at trial that the purchase price

actually was $80,000. She testified that she gave the money to her husband for the purpose of the purchase; she had stated at her deposition that she gave the money directly to the seller. Plaintiff also testified that she customarily signed documents herself, and had never given anyone authority to sign her name.

Defendant then introduced into evidence some 100 documents to establish that for more than 20 years someone had been signing plaintiff's name on legal documents. The evidence established that plaintiff never objected to having her name signed in any of these transactions, and that the deed in question was the only one she disputed. It was shown that she was the owner of a one-fourth interest in a racetrack, but that she did not sign or authorize anyone to sign the document accepting that interest. Certain credit guarantees purportedly bearing her signature were not signed by her, although she knew that credit was obtained for the purpose of remodeling the racetrack. The signature as a comaker of a certain note was not hers, but she later signed a letter to the lender pertaining to that note. Plaintiff had also disposed of certain property which she owned by eight deeds, some of which were not in her handwriting. However, she claimed none of that property as hers, and conceded that she was no longer in title. Someone had also signed plaintiff's name on an industrial lease in 1960, and she had accepted the benefits of that lease.

Plaintiff's federal income tax returns were introduced to show that she did not declare any rental income or tax deductions on the subject property. The sisters, on the other hand, did claim federal income tax deductions for real estate taxes on the property. In addition several of plaintiff's statements of financial assets were introduced and in these she did not claim to own the subject property.

Charlotte Brostow testified that she did not recall notarizing the deed in question, although it bore her signa-

ture as notary. She had been Titus Haffa's secretary for 20 years. About six months prior to trial, she had a telephone conversation with plaintiff, in which the latter said that she thought that the property in question was too expensive for the sisters to maintain, and that they ought to sell it.

Henry Pollenz, an attorney, testified that he had represented Titus Haffa for more than 25 years. He had seen Titus sign plaintiff's name to legal documents several times. Specifically, he had seen him sign plaintiff's name to a deed regarding certain Wisconsin realty. He also testified that plaintiff and the sisters had abided by all business decisions made by Titus without questioning them.

Pauline Haffa testified that the sisters paid no consideration for the property in question.

We need only consider whether the evidence supported the trial court's finding that plaintiff failed to meet her burden of proving that her signature on the deed was forged, and whether she approved and impliedly consented to the deed in question.

■ ■ The essential elements of a forgery are a false writing or alteration of some instrument in writing, the instrument as made must be apparently capable of defrauding, and there must be an intent to defraud. The false signing of another's name to a document without an intent to defraud or deceive someone does not constitute forgery. People v. Fore, 384 Ill 455, 51 NE2d 548 (1943); Spellbrink v. Continental Illinois Nat. Bank & Trust Co., 328 Ill App 331, 66 NE2d 98 (1946).

■ While one of the necessary elements of a conveyance of real estate is that the deed be signed by the grantor, Chicago Land Clearance Commission v. Yablong, 20 Ill2d 204, 170 NE2d 145 (1960), the signature need not be in the grantor's handwriting, Koepke v. Schumacher, 406 Ill 93, 92 NE2d 152 (1950). And he may

authorize a third party to sign it for him, Witt v. Panek, 408 Ill 328, 97 NE2d 283 (1951). The court, in O'Donnell v. Kelliher, 62 Ill App 641 (1895), in finding a trust deed valid, stated at p 656:

"All know that a person may sign by another, and, so signed, the signature becomes his by adoption; and even though his signature were placed upon the deed without his authority, if he subsequently acknowledged the deed to be his, the deed would be effectual against him."

Miller v. Swanson, 66 Ill App2d 179, 213 NE2d 294 (1965), involved a suit to foreclose a trust deed. In that case, the wife signed her husband's name on the deed. The court, in holding the deed valid, stated at p 192:

". . . although the signature of J. Walter Swanson to the note and deed of 1955 appears not to have been his handwriting, that fact does not establish forgery. A person may sign an instrument by another and adopt the signature as his own."

The finding by the trial court that plaintiff failed to prove that her signature was forged was not against the manifest weight of the evidence, and was in fact supported by ample evidence. There was evidence presented that the husband had signed several legal documents for plaintiff, and that she approved and consented to all his business decisions. Multitudinous documents, some later expressly acknowledged by plaintiff, were also introduced into evidence. Many of these documents bore plaintiff's name, but were not in her handwriting. The signatures on some deeds to property which she had sold were not in her writing, but she subsequently treated the properties as sold and asserted no claims against those properties. Certain guarantees, although not signed by her, were subsequently honored and ac-

473

knowledged by plaintiff. As to the subject property, her income tax returns and statements of assets did not treat the subject property as hers, and her conversation with her husband's secretary that the sisters should sell, impliedly assumed that it was their property, not hers. It is apparent that there was no intent on the part of the party placing plaintiff's name on the deed to defraud or deceive her, and consequently, there was no forgery. Rather, the evidence indicates that she knew that the property had been transferred to the sisters, that she treated the property as theirs, and that she ratified the deed by her subsequent conduct.

Since we have found that there was sufficient evidence to support the trial court's determination that plaintiff failed to prove forgery, we deem it unnecessary to consider plaintiff's contentions that the court erred in finding that she was estopped from attacking the validity of the deed, or that the court erred in finding that defendants had proved adverse possession.

Plaintiff also assigns as error certain rulings by the trial court which would require remandment of the cause. Under this heading, she first contends that the trial court erred in admitting into evidence certain documents without a showing of genuineness or valid execution. Plaintiff argues that since many of the documents introduced were not signed by her, they were inadmissible, because their execution was not established. We do not agree.

■■■■ Each party is entitled to present evidence which is relevant and material to his theories of the case. Schneider v. Kirk, 83 Ill App2d 170, 226 NE2d 655 (1967). The test for relevancy is whether the evidence offered tends to prove an issue in dispute. Phillips v. Lawrence, 87 Ill App2d 60, 230 NE2d 505 (1967). Moreover, evidence tending to show conduct inconsistent with an opponent's theory is admissible. Vacker v. Yeager, 151 Ill App 144 (1909).

██ In the instant case, defendants advanced the theory that plaintiff on many occasions allowed and consented to someone else signing her name on various documents. Evidence tending to show such a course of conduct was unquestionably relevant and material. Consequently, documents which plaintiff did not sign, but which, by subsequent acts, were treated as valid by her, would tend to show such a course of conduct, and would be admissible.

██ While documents must be properly authenticated, or must be shown to be what they purport to be, recognition of the disputed document has been held sufficient for its authentication. Gold v. Rousso, 238 Ill App 427 (1925).

██ In the case at bar, plaintiff, by her subsequent actions, recognized many of the documents which were introduced into evidence. She conceded that certain deeds which she had not signed were sufficient to pass title; she accepted rent pursuant to an industrial lease which she had not signed; and she claimed part ownership of a racetrack by virtue of an acceptance which she had not signed.

A case cited by plaintiff in support of her contention, Barker v. Barker, 342 Ill App 46, 95 NE2d 135 (1950), is not in point. In that case, a letter was improperly authenticated, since no proof of signature was made. However, the letter was sought to be admitted for the purpose of proving what it said, whereas in the instant case the documents were introduced for the purpose of showing that plaintiff did not sign them but subsequently acknowledged their legal effect. Moreover, in the Barker case, the court found that the improper introduction of the letter was harmless error.

Plaintiff next contends that the trial court abused its discretion in permitting the defendant bank to file an amendment to the answer and counterclaim at the conclusion of defendant's case.

 The Civil Practice Act, Ill Rev Stats 1967, c 110, § 46(1) provides that at any time before final judgment amendments may be allowed on just and reasonable terms changing the defense or adding defenses. The amendment in the instant case added the defenses of estoppel, a resulting trust, and adverse possession. Plaintiff did not object to the filing of the amendment at the time of trial, and we do not see how plaintiff was prejudiced by the amendation.

 For the first time, in her reply brief, plaintiff contends that, because of the bias of the trial judge against her, she did not receive a fair trial. We will not consider any issue raised for the first time in a reply brief. Ill Rev Stats 1967, c 110A, § 341(g); Nielsen v. Duyvejonck, 94 Ill App2d 224, 236 NE2d 743 (1968).

Accordingly, the decree of the Circuit Court is affirmed.

Decree affirmed.

DEMPSEY, P. J. and LEIGHTON, J., concur.