FIRST NATIONAL BANK OF PITTSFIELD, Plaintiff-Appellee, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—88—0033

Opinion filed October 20, 1988.

Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, of Jacksonville (Barbara Fritsche, of counsel), for appellant.

William E. Lowry, of Pittsfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

This appeal arises from an attempt by plaintiff First National Bank of Pittsfield to recover from defendant Country Mutual Insurance Company the unpaid mortgage balance on property destroyed by fire. The issue presented is whether defendant's notice of intent not to renew the policy insuring the premises was sufficient. The circuit court of Pike County ruled it was not. For the reasons that follow, we reverse and remand.

The facts are undisputed. Plaintiff's complaint alleges the following: On November 6, 1981, Burdette and Eloyce Carlton (Carltons)

executed a mortgage on their 40 acres and home in plaintiff's favor and agreed to keep the premises insured; on January 10, 1986, defendant issued to the Carltons a "Multi-Purpose Farm Owner Policy" to insure the premises; plaintiff was listed as an additional insured on the declarations of insurance; the declaration form plus section 143.17 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1985, ch. 73, par. 755.17) require 10 days' notice for cancellation of a policy for nonpayment of premium; plaintiff did not receive 10 days' notice of any cancellation; defendant refused to allow plaintiff to file a proof of loss following the destruction of the Carltons' home by fire January 23, 1987; defendant failed to respond to plaintiff's demand for payment. Plaintiff requested judgment in the amount of the unpaid principal balance of the mortgage plus accrued interest.

Attached to the complaint were the insurance policy and the declarations of insurance. The nonrenewal provisions of the policy state in pertinent part:

"If we decide not to renew this policy, we will mail a written notice to you at least 30 days before the expiration date. ***

* * *

The notice will be sent to your last mailing address known to us. Proof of mailing will be sufficient proof of notice. If you fail to pay the renewal, the policy will lapse on the expiration date."

The "Conditions" portion of the policy does not state membership in the Pike County Farm Bureau (Farm Bureau) is required to purchase this policy. A section in the policy entitled "Mutuality of Policy" indicates the insured, by accepting the policy, becomes a member of Country Mutual Insurance Company with all the rights and privileges of a member as provided in the company's bylaws. No copy of the bylaws appears in the record on appeal. Also attached to the complaint were a copy of the mortgage instrument and the declarations of insurance form listing plaintiff mortgagee as an "additional interest" under the policy.

Defendant's answer, filed November 30, 1987, admitted plaintiff did not receive a notice of the policy cancellation, but stated defendant mailed plaintiff a notice of intent not to renew more than 30 days in advance, in accordance with section 143.17(a) of the Code. Ill. Rev. Stat. 1985, ch. 73, par. 755.17(a).

The parties filed cross-motions for summary judgment pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). Defendant's motion, filed November 30, 1987, was accompanied by affidavits of Mary Schlabowske and D. R. Gordon.

Schlabowske, defendant's underwriting administration supervisor, stated she supervised processing of files in cases where notice of nonrenewal of Farm Bureau membership has been received. She stated the Carlton policy was a six-month policy effective January 10, 1986, and the policy was renewed July 10, 1986, for another six months. She stated the Carlton policy expired January 10, 1987, at 12:01 a.m. On December 1, 1986, her department mailed a "Notice of Intent not to Renew" to the Carltons and to plaintiff. To her knowledge, the Carltons' Farm Bureau membership was not reinstated.

Schlabowske's December 1, 1986, notice, submitted with the affidavit, shows the heading "Notice of Intent Not to Renew" in capital letters on the upper right-hand side of the page. "Certificate of Mailing" appears immediately below. The notice is addressed to the Carltons and plaintiff. It reads:

"Re: Farm Bureau Membership

Pike County Farm Bureau has notified us that you have not renewed your Farm Bureau membership. That membership is required in order to be insured by Country Mutual Insurance Company.

Therefore, unless you reinstate your Farm Bureau membership, nonrenewal of Farmowner Policy AL0528365 will be necessary, with coverage terminating effective January 10, 1987. If you hold a membership in a county other than Pike, please contact that Farm Bureau office so the records may be corrected.

We are required to provide you with at least 30 days advance notice when we nonrenew a policy. If you do not renew your Farm Bureau membership, you may contact your agent if you need assistance in obtaining other insurance. You may also write to the Illinois Automobile Insurance Plan, Suite 1740, 20 N. Wacker Drive, Chicago, Illinois 60606.

If you have any questions on this matter, please contact the Pike County Farm Bureau.

The Illinois Insurance Code provides that you may request a hearing by doing so in writing not less than 20 days prior to the termination date. Such request should be addressed to the Director of Insurance, State of Illinois, Department of Insurance, Springfield, Illinois 62767."

The affidavit of D. R. Gordon, defendant's senior claims attorney, stated Farm Bureau membership was required for buying the kind of insurance purchased by the Carltons, but was not required for all Country Companies policies. He stated the Farm Bureau was not defendant's agent and that Farm Bureau dues were paid directly to

the Farm Bureau. Attached to the affidavit was a letter from plaintiff's attorney dated February 17, 1987, which stated in part:

"Our file contains a letter dated December 1, 1986 informing the Carltons of Country Companies' intent to cancel coverage due to non-payment of the Farm Bureau membership. We never received a notice of cancellation and assume that the Carltons paid their Farm Bureau membership as demanded in your December 1, 1986 letter. We never received from you any notice of cancellation or termination of the policy and assume the same is still in effect, otherwise, we would have purchased other insurance or advanced the premium."

Plaintiff filed its motion for summary judgment December 17, 1987. Attached to the motion was the affidavit of Kent Turnbull, one of plaintiff's loan officers. Turnbull stated he received defendant's December 1, 1986, letter to the Carltons concerning "Farm Bureau Membership." Attached to Turnbull's affidavit were two examples of standard notices of cancellation to mortgagees sent to plaintiff on other occasions by defendant. He stated the December 1, 1986, letter was the first of its type received during Turnbull's employment with plaintiff. Plaintiff also filed a second affidavit by Turnbull January 6, 1988, setting forth the amount of the unpaid principal balance plus interest, and the amount for which the Carltons' dwelling was insured.

In denying defendant's motion for summary judgment and granting that of the plaintiff, the court stated:

"I believe that the bank could reasonably rely upon the Statute to the extent that it could require or expect to receive the actual Notice of Intent to Terminate, and I do not consider your exhibit being the letter of December 1, 1986 from the Personal Lines Underwriting Mary Schlabowske as an actual notice to terminate. It appears to be a solicitation for Farm Bureau membership dues."

The court's December 17, 1987, written order stated in pertinent part:

"Motion granted for plaintiff as court rules that the 'Notice of Intent Not to Renew' is not sufficient to meet the 10 day notice requirement of sect. 143.17 of Insurance Code as Court finds the notice to be a solicitation for Farm Bureau membership."

Judgment was entered in plaintiff's favor for $20,656.32. The court denied defendant's motion to reconsider January 8, 1988. Defendant's notice of appeal was filed January 13, 1988.

On appeal, defendant contends the notice was unambiguous and

did not constitute a solicitation for Farm Bureau membership. It also argues the 10-day notice referred to in the court's order is irrelevant, as defendant complied with the 30-day notice requirements for nonrenewal notices under the Code. Plaintiff argues the notice is ambiguous and actually constitutes a cancellation for nonpayment of premium, for which the Code requires 10 days' notice not given here.

■ Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. (*Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 33, 437 N.E.2d 22, 25.) We first address the granting of plaintiff's motion for summary judgment.

The Code defines the following terms:

"(c) 'Renewal' or 'to renew' means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; however, any successive policies issued by the same insurer to the same insured, for the same or similar coverage, shall be considered a renewal policy.
***
(d) 'Nonpayment of premium' means failure of the named insured to discharge, when due, any of his obligations in connection with the payment of premiums or any installment of such premium that is payable directly to the insurer or to its agent.
***
(f) 'Cancellation' or 'cancelled' means the termination of a policy by an insurer prior to the expiration date of the policy. A policy of automobile or fire and extended coverage insurance which expires by its own terms on the policy expiration date unless advance premiums are received by the insurer for succeeding policy periods shall not be considered 'cancelled' or a 'cancellation' affected by the insurer in the event such premiums are not paid on or before the policy expiration date." Ill. Rev. Stat. 1985, ch. 73, pars. 755.13(c), (d), (f).

Section 143.17 of the Code governs notices of intention not to renew:

"a. No company shall fail to renew any policy of insurance, to which Section 143.11 applies, unless it shall send by mail to the named insured and the mortgagee or lien holder, at the last

mailing address known by the company, at least 30 days advance notice of its intention not to renew. An exact and unaltered copy of such notice shall also be sent to the insured's broker, if known, or the agent of record and to the last known mortgagee or lien holder as named in the policy at the mortgagee's last known address. However, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation shall be given.

b. This Section does not apply if the company has manifested its willingness to renew directly to the named insured.

c. Should a company fail to comply with (a) and (b) of this Section, the policy shall terminate only on the effective date of any similar insurance procured by the insured with respect to the same subject or location designated in both policies.

d. Renewal of a policy does not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.

e. In all notices of intention not to renew any policy of insurance, as defined in Section 143.11 the company shall provide a specific explanation of the reasons for nonrenewal." Ill. Rev. Stat. 1985, ch. 73, par. 755.17.

■ In addressing defendant's argument that the notice is not ambiguous, we note a document is not ambiguous just because the parties failed to agree upon its meaning. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031, 1034.) A document is ambiguous if its terms are capable of being understood in more than one sense because either an indefiniteness of expression or a double meaning is attached to them. (*Village of Grandview*, 122 Ill. App. 3d at 797, 461 N.E.2d at 1034.) Ambiguous language is generally construed against the drafter of the language. *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.

Defendant claims the notice is not ambiguous because it informs the insured of the termination date of the policy, the reason for the termination, and the means by which one may avoid termination. Plaintiff claims the subject line of the letter ("Re: Farm Bureau Membership") causes confusion by its reference to Farm Bureau membership instead of the nonrenewal of the policy. Plaintiff further claims the wording of the notice suggests the main topic of the letter is Farm Bureau membership.

While it is true the subject line of the letter refers solely to Farm Bureau membership, the notice is entitled "Notice of Intent Not to

Renew." The notice also contains the phrase "unless you reinstate your farm bureau membership \*\*\* nonrenewal will be necessary." The notice states the date the policy will expire. The letter refers any questions to the Pike County Farm Bureau and invites the insured to contact the Farm Bureau if the membership records are incorrect.

■ Any alleged ambiguities resulting from the notice's subject line, and the statement that failure to reinstate the membership will make nonrenewal necessary, are not enough to override the overall import of the notice. While it leaves open the possibility of renewal once Farm Bureau membership is reinstated, plaintiff's argument that this is conciliatory misses the fundamental difference between nonrenewal and cancellation notices. Nonrenewal involves the expiration of a policy at the end of its term, whereas cancellation is a unilateral termination by the insurer before the end of the policy. (*Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 167, 334 N.E.2d 129, 130.) For defendant's notice to suggest the Farm Bureau's records may be inaccurate or incomplete does not make the notice indefinite or give it a double meaning. Other facts given as to where to go for help in obtaining other insurance and how to protest the decision lend additional finality to the notice. A reasonable person reading this notice would understand that to take no action would result in the policy's expiration on the date stated.

Plaintiff cites a number of cases involving cancellation to illustrate its ambiguity argument. *Burnett v. Illinois Agricultural Mutual Insurance Co.* (1943), 318 Ill. App. 629, 48 N.E.2d 559, involved a policy of insurance which by its own terms could be cancelled on five days' notice. The plaintiff in that case received a letter from the insurance company stating that the required Farm Bureau membership was not in good standing. The letter stated in part: " 'We hope that we will not be obliged to cancel \*\*\* if you do not renew \*\*\* membership \*\*\*, it will become our duty to cancel \*\*\*.' " It continued "We are, therefore, notifying you that at 12:01 Central Standard Time, on May 11, 1941 this policy will be cancelled unless we are advised before that date that you have renewed the membership which entitles you to this insurance. We hope that you will call at the Farm Bureau office and renew your affiliations with your County Farm Bureau before the above mentioned date, if you have not already done so.' " *Burnett*, 318 Ill. App. at 630-31, 48 N.E.2d at 559-60.

■ The court stated the notice was sufficient if it positively and affirmatively indicated to the insured the company intended to terminate the policy. It ruled the letter was a conciliatory attempt to secure reinstatement of plaintiff's Farm Bureau membership, coupled with

the statement that at a future time the policy would be cancelled unless the membership was reinstated. The letter did not "positively and unequivocally" inform the insured that the insurance company intended the policy would terminate after that date. *Burnett*, 318 Ill. App. at 634, 48 N.E.2d at 561.

Plaintiff conceded during oral argument of this cause that the language of the notice in the case at bar is not as conciliatory as that in *Burnett*. Here, the notice does not contain language encouraging renewal of Farm Bureau membership, as the *Burnett* letter did. *Burnett* is also distinguishable from this case because in *Burnett* the first letter was followed up by a second one which notified the insured the company had cancelled the policy. Similarly, *Mitchell v. Burnett* (1971), 1 Ill. App. 3d 24, 272 N.E.2d 393 ("avoid cancellation" notice insufficient to cancel when followed by "final cancellation" notice), and *Econo Lease, Inc. v. Noffsinger* (1975), 30 Ill. App. 3d 339, 332 N.E.2d 470, *rev'd on other grounds* (1976), 63 Ill. 2d 390, 349 N.E.2d 1 ("avoid lapse" notice not positive and unequivocal; insured later received "policy lapsed" notice), involved two notices sent by the insurance company, which did not occur here.

The cancellation provisions of the Code do not pertain to situations in which the policy automatically expires at the end of the policy period. In *Hunter v. West American Insurance Co.* (1981), 95 Ill. App. 3d 108, 419 N.E.2d 719, that plaintiff failed to renew prior to the expiration of his policy. The insurance company sent a "premium notice" stating reinstatement would occur without interruption if the premium was received within 15 days after the expiration date. Nearly a month later, the plaintiff was notified his policy had lapsed. Eleven days later, he was involved in an accident. He argued the notice allowing reinstatement without interruption upon payment of the premium within 15 days of the expiration date was conciliatory and ineffective to cancel the policy. He also argued the letter was merely marked "premium notice" and not "cancellation notice." He also contended the notice that his policy had lapsed was ineffective to cancel. The court ruled the case had nothing to do with cancellation and ruled in the insurance company's favor. Relying on *Shiaras*, the court emphasized the distinction between cancellation, where the policy is unilaterally terminated by the insurer prior to the end of the policy period, and lapse, when the policy automatically expires at the end of the policy period.

Section 143.17 requires an insurer to give the insured 30 days' notice, plus a reason why the policy is not being renewed. It must not manifest any willingness to renew to the insured. Here, the notice

was dated December 1, 1986, and advised the Carltons their policy would not be renewed January 10, 1987, more than 30 days after the date of the letter. The notice contained the reason for the nonrenewal. Plaintiff has not argued defendant manifested any willingness to renew to the Carltons. The notice of intent not to renew was unambiguous and complied with the statute.

Plaintiff additionally claims the Farm Bureau dues constitute a premium, and therefore, failure to pay the dues constitutes a failure to pay a premium. Plaintiff thus attempts to invoke the provisions of the final sentence of section 143.17(a), which requires 10 days' notice for cancellation resulting from nonpayment of premium. It argues the notice given here was insufficient under the statute.

Essential to determination of this issue is whether the Farm Bureau dues constitute a premium. The trial court did not rule on this issue, and therefore, we have no occasion to consider it. Section 143.13(d) of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.13(d)) defines "nonpayment of premium" but not "premium." It is not clear from section 143.13(d) that "obligations in connection with the payment of premiums" includes dues. (Ill. Rev. Stat. 1985, ch. 73, par. 755.13(d).) We note "premium" is defined in the laws governing fraternal insurance associations (Ill. Rev. Stat. 1985, ch. 73, par. 897.1(d)) and this definition includes dues. "Premium" is also defined in section 531.05(10) of the Illinois Life and Health Insurance Guaranty Association Law (Ill. Rev. Stat. 1985, ch. 73, par. 1065.80—5(10)). The legislature may wish to supply a definition of "premium" in section 143.13.

Plaintiff also argues the notice of intent not to renew is ineffective where the insurer requires that the insured become a member of an organization, and that requirement is not included as a condition in the policy or in the declarations of insurance. Plaintiff cites no authority for this proposition. The matter is waived. 107 Ill. 2d R. 341(e)(7).

The defendant's notice of intent not to renew was not ambiguous and complied with the statute. The trial court's decision to grant plaintiff's motion for summary judgment was in error. As there is no question of fact to be determined, we reverse and remand with instructions to the trial court to grant defendant's motion for summary judgment.

Reversed and remanded with directions.

McCULLOUGH and LUND, JJ., concur.