*In re* ESTATE OF MORRIE CHAITLEN, Deceased (Stephen D. Rubin, Plaintiff-Appellant and Cross-Appellee, v. National Boulevard Bank of Chicago, Ex'r of the Estate of Morrie Chaitlen, Deceased, Defendant-Appellee and Cross-Appellant).

First District (1st Division)   No. 88—0934

Opinion filed January 30, 1989.

James E. Dahl & Associates, of Chicago (Walter P. Dahl, of counsel), for appellant.

Daley & George, Ltd., of Chicago (John J. George and Dennis J. Aukstik, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order upholding the validity of an agreement to create a trust and directing the creation of a trust. The issues raised on appeal are whether the trial court erred in imposing a trust and whether the trust should have been imposed retroactively to the date of decedent's death.

On January 16, 1974, Donna Rubin and plaintiff, Stephen Rubin, were divorced. On the same day, the decedent, Morrie Chaitlen, the father of Donna Rubin, executed an agreement to the effect that he would provide for the support, maintenance and education of the two minor children of the parties in the event that his daughter failed to do so.

The written memorandum provides, in part, as follows:

> "In return for effecting the foregoing and for your agreeing that my daughter and I have custody of your minor children, Michael and Wendy Rubin, I will execute a general release to Stephen D. Rubin and to Graver-Dearborn Corporation and Donna will agree to be primarily responsible for the support, maintenance and education of the children. If for any reason she is unable to support, maintain and educate the children, I will agree to assume the responsibility for their support, maintenance and education during whatever period of time that Donna is unable to do so.
>
> In order to fulfill my contingent responsibility to support, maintain and educate Michael and Wendy Rubin if my daughter Donna shall fail to do so, and I shall die during this period, I will, by my last will, provide for the creation of a trust or trusts in such amounts as will amply provide for their support, maintenance and their primary, secondary and college education after my death if my daughter Donna is unable to support, maintain and educate the children."

Morrie Chaitlen died on August 24, 1983. His will, which was admitted to probate on September 28, 1983, failed to create the trust as provided in the above agreement.

The parties disagree as to the obligation of Morrie Chaitlen under the written agreement. The executor contends that Chaitlen was only obligated to provide for the children via a trust in the event that his daughter failed to provide for the children during his lifetime. The executor claims that as Donna Rubin continued to provide for her chil-

dren from January 1974 until the time of Chaitlen's death, the decedent was not obligated to provide for the children in his will. The plaintiff contends that the language of the agreement obligated Chaitlen to provide for his grandchildren after his death in the event that his daughter failed to do so and that Donna Rubin had failed to support the children subsequent to her father's death. The parties agree that no evidence was heard with respect to specific costs for the support, maintenance or education of the children subsequent to the death of decedent.

The trial court held that a trust in the amount of $240,000 should be established but that the trust should be prospective only. Both parties appealed.

The executor argues that the trial court erred in construing the agreement. The executor's position is that under the language of the agreement, the decedent was only obligated to provide a trust for the grandchildren in the event that his daughter failed to support the children during decedent's lifetime, and as that condition precedent did not occur, decedent was not obligated to provide for the children in his will. The executor argues that the contingent nature of the decedent's obligation is reflected in the following language:

> "In order to fulfill my contingent responsibility to support, maintain and educate Michael and Wendy Rubin, *if my daughter Donna shall fail to do so, and I shall die during this period* ***." (Emphasis added.)

The executor's reading of this provision is that Donna's inability to provide support during decedent's lifetime is an express condition precedent to decedent's responsibility to provide for the children in his will.

The executor also argues that the written memorandum was ambiguous with respect to decedent's responsibility to provide for his grandchildren, and therefore, under *Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 326 N.E.2d 33, the court should have allowed extrinsic evidence to be submitted for the purpose of determining the true meaning of the contract. The executor's position is that the agreement could have been understood to be either that the decedent was not obligated to provide in his will for the grandchildren until his daughter became unable to provide the necessary support or that decedent was required to provide for such support regardless of his daughter's ability to provide support. For this reason, the executor contends that it should have been permitted to introduce a progression of eight drafts which culminated in the written memorandum. We disagree with both arguments.

■ In interpreting a contract, the court must determine its meaning from the language used by the parties. (*Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287-88, 458 N.E.2d 480.) A court may resort to rules of construction if the language is ambiguous; but ambiguity exists only where a contract is reasonably susceptible of different constructions, not merely where the parties disagree on the proper construction. (*Aqua-Aerobic Systems, Inc. v. Ravitts* (1988), 166 Ill. App. 3d 168, 171, 520 N.E.2d 67.) In interpreting a contract, the court must consider the entire document, not merely an isolated part of the contract. *Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, 478 N.E.2d 311.

■ Applying the above well-settled principles, we find that there was no condition precedent to the imposition of the trust nor was there any ambiguity to warrant the introduction of extrinsic evidence. At the time the agreement was entered into, Wendy was six years of age and Michael was three years of age. The agreement provided that in the event his daughter failed to provide for them, including their college educations, a trust would be set up in the will to do so. Under the executor's alternative interpretation, if the decedent had died the day after the agreement was executed and his daughter thereafter failed to provide for the children, decedent's estate would have no duty to do so. Such a result would be completely contrary to the stated interest of the decedent to be contingently responsible for his grandchildren's support and education until they completed college. The only reasonable interpretation of the phrase "if my daughter Donna shall fail to do so, and I shall die during this period" is that the "period" referred to is the time between the execution of the contract and the completion of the children's college education. A plain reading of the language of the agreement indicates that the decedent intended to provide a trust for the support, maintenance and education of the grandchildren after his death in the event his daughter failed to do so. Any other construction would render decedent's promise to provide contingent support for his grandchildren meaningless and illusory.

■ We also disagree with the executor's contention that the written agreement is void as contrary to the public policy of Illinois. The basis for this argument is that the State imposes a duty upon a father to support his children and that duty cannot be bargained away. (See, *e.g.*, *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 198, 393 N.E.2d 1256.) While there is no question but that under Illinois law plaintiff has a continuing duty to support his children during their minority, the language of the agreement here in no way relieves him of this

duty. It merely provides that Donna Rubin and decedent would be primarily responsible for the support, maintenance and education of the children.

██ The executor also contends that the trial court erred in finding that the written agreement was supported by adequate consideration. The executor argues that although pursuant to the agreement the consideration provided by the plaintiff included his promise to transfer certain stock and that the custody of his minor children would be granted to Donna Rubin and decedent, such consideration was inadequate as the plaintiff was under a preexisting duty to do so by virtue of the judgment for dissolution of marriage.

The agreement states as follows:

"With reference to the proposed settlement agreement arising out of the pending divorce action between my daughter, Mrs. Donna Rubin, and yourself as Cause No. 72 D 24996 in the Circuit Court of Cook County, Illinois, I make the following proposals in clarification of the said settlement agreement now being negotiated."

The reference to the "proposed settlement" makes it clear that the agreement was executed prior to the settlement that was included in the judgment for dissolution of marriage; therefore, there is no basis upon which to find that there was insufficient consideration to support the agreement.

██ We next consider the executor's argument that the trial court imposed a trust upon the assets of the estate in the amount of $240,000 without an adequate basis in the record. The determination of damages by a trial court sitting without a jury will not be set aside unless manifestly erroneous. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 148-49, 281 N.E.2d 323.) Although absolute certainty as to the amount of damages is not required, there must be an adequate basis in the record for the court's determination. *Society of Mount Carmel v. Fox* (1980), 90 Ill. App. 3d 537, 543, 413 N.E.2d 480.

██ The trial court here was not presented with any documentary evidence regarding the past, present or anticipated future expenses of either child. The plaintiff testified that costs for the daughter were approximately $20,000 per year and that costs for the son's private schooling at the time of trial were between $20,000 and $35,000 per year. On cross-examination, Donna Rubin stated that her daughter's schooling cost $20,000 per year and her son's schooling cost $30,000 per year and that her son's formal schooling was expected to be completed in approximately March of 1988. Despite certain contradictory

testimony and an apparent lack of documentation, the trial court imposed the trust based upon $20,000 per year in expenses for Wendy Rubin and $40,000 per year in expenses for Michael Rubin. The total amount was projected to cover Wendy Rubin's remaining two years in college and five remaining years of secondary and college education for Michael Rubin. Because the determination of the amount of the trust is without an adequate basis in the record, we remand this matter to the trial court for a hearing on the question of costs for the support, maintenance and education of the Rubin children.

■ The plaintiff has raised the issue that the trust should have been established not prospectively from the conclusion of the litigation but from the date of decedent's death. We agree. The language of the agreement makes it clear that the obligation undertaken by the decedent began not on January 8, 1988, but at his death on August 29, 1983. Although the executor has suggested that there is no evidence that Donna Rubin had failed to support the children in the past and therefore the trust was properly established prospectively, we believe this issue is inadequately addressed in the record. However, we believe the language of the agreement reflects that the trust was intended to be established as of the time of Morrie Chaitlen's death so that the money would be available at such time as Donna Rubin failed to support the children, not that the trust was to be established only at such time as Donna Rubin failed to support the children. Therefore, on remand, the trial court is directed to calculate the amount of the trust to cover the time period from the date of decedent's death through a period that would reasonably cover Michael's anticipated college expenses. The parties have agreed that any unexpended amounts in any year are to be released to the defendant.

In summary, we affirm the trial court's imposition of the trust, but reverse and remand with directions to create a trust to commence from August 29, 1983, and to recalculate the amount necessary to fund such trust.

Affirmed in part, reversed in part and remanded.

CAMPBELL and BUCKLEY, JJ., concur.