WILLIAM YAMNITZ, d/b/a Yamnitz and Associates, Plaintiff-Appellee, v. WILLIAM J. DIESTELHORST COMPANY, INC., Defendant-Appellant.

Fourth District   No. 4—92—0285

Argued August 18,.1993.—Opinion filed October 7, 1993.

246

STEIGMANN, P.J., specially concurring.

Denis A. McGrady, Jr. (argued), of McGrady & McGrady, of Gillespie, for appellant.

Larry D. Kuster (argued), of Rammelkamp, Bradney, Dahman, Kuster, Keaton, Fritsche & Lindsay, P.C., of Jacksonville, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff William Yamnitz, d/b/a Yamnitz & Associates, sued defendant William J. Diestelhorst Company, Inc., in the circuit court of Macoupin County in an action to enforce a mechanics' lien pursuant to section 23 of the Mechanics Lien Act (Act) (Ill. Rev. Stat. 1985, ch. 82, par. 23). Defendant, a general contractor, had a contract with the State of Illinois Department of Transportation (IDOT) and Macoupin County for a street improvement project in Girard, Illinois. Plaintiff and defendant entered into a subcontract, and this action concerns the parties' disputes over how much money plaintiff was due under the subcontract. Following a jury trial, a verdict was entered in favor of plaintiff and against defendant in the total amount of $40,948.92. The jury found defendant owed plaintiff $18,000 as the balance due under the subcontract and $22,948.92 as interest due on the unpaid balance. Judgment was entered on the verdict.

The issues raised on appeal are whether (1) the trial court erred by barring the opinion testimony of Joseph Schoppet, defendant's certified public accountant (CPA), because the witness was not disclosed as an expert pursuant to Illinois Supreme Court Rule 220 (134 Ill. 2d R. 220); (2) the trial court erred by barring the opinion testimony of Walter J. Diestelhorst, owner and chief operating officer of defendant, for the failure of defendant to disclose that witness pursuant to Supreme Court Rule 220; (3) the trial court erred by allowing into evidence testimony concerning defendant's contract with the State of Illinois and Macoupin County because any relevance it might have had was outweighed by its prejudicial impact on defendant; (4) the trial court improperly refused to give the jury the following instruction: "Contract language is to be given its clear meaning if clarity is

present, but ambiguities or uncertainties are to be resolved against the party creating them"; (5) plaintiff was not entitled to any interest under the subcontract between the parties because plaintiff prevented defendant from getting paid for the job by filing a mechanics' lien; and (6) whether the evidence so overwhelmingly favored defendant that the trial court should not have allowed the verdict to stand or, in the alternative, whether the jury's verdict was against the manifest weight of the evidence. We affirm.

The first issue is whether the trial court erred by barring the opinion testimony of Joseph Schoppet, defendant's CPA, because the witness was not disclosed as an expert pursuant to Rule 220. Under the written subcontract between the parties, plaintiff was to control and oversee construction of a portion of the overall project. Defendant provided the manpower for most of the work and bankrolled the job for plaintiff. The contract between the parties provided that defendant would furnish at the expense of plaintiff "weekly payroll payments to the [plaintiff's] labor force, the actual cost to be deducted from" the amount due to plaintiff under the subcontract. In charging plaintiff for labor costs, defendant included a 10% charge "for overhead." That was one of the items in dispute in this case.

Schoppet was disclosed as a witness in discovery, but not as an expert witness pursuant to Rule 220. Defendant does not argue that Schoppet is not an expert. Indeed, defendant wants Schoppet's opinions that contractors commonly assign overhead costs as a percentage of labor when calculating actual costs and that, if a contractor fails to do this, the contractor would go out of business.

Schoppet was not disclosed as an expert, and, pursuant to Rule 220, the trial court ruled that Schoppet could not testify as an expert on the question of charges for overhead. As an offer of proof, defendant submitted a deposition of Schoppet in another case (William Yamnitz, d/b/a Yamnitz & Associates v. William J. Diestelhorst Company, Inc., Greene County case No. 85—L—80), which the trial court considered. Defendant was also allowed to have Schoppet testify as an additional offer of proof.

Defendant was Schoppet's client in 1984. He had been auditing construction clients since 1975 and was familiar with chargeable labor rates in the construction industry. Schoppet testified there are three items to consider in calculating actual labor costs: the actual base pay, fringe benefits, and a percentage of direct labor to cover overhead costs. The percentage for overhead varies from contractor to contractor and depends on experience. A company has to take a percentage to recover overhead costs or it would not make a profit. Overhead in-

cludes several types of expenses, but the charge is applied to labor because it is the most common denominator. Schoppet would take the payroll of a particular contractor and compare that to the company's whole amount of payroll to arrive at the percentage to allocate to the particular job. This was done for defendant in 1984. Schoppet explained how he calculated the percentage to be applied. Schoppet stated his deposition testimony was essentially the same as his testimony in court. A review of the transcript of Schoppet's deposition discloses that he never opined that the charge was a custom of the construction industry and, although the same parties and law firms were involved, there is no disclosure in the deposition that Schoppet would be called as an expert witness in either case. The offer of proof was denied.

It is defendant's argument that Schoppet need not be disclosed as an expert pursuant to Rule 220 simply because he was defendant's accountant in 1984. According to defendant, Schoppet is an "occurrence witness." Defendant cites *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 493-95, 531 N.E.2d 51, 58-59, in which this court held that an employee engineer was not a retained expert who had to be disclosed pursuant to Rule 220 because (1) he was deposed and his status as expert was fully disclosed in the deposition and (2) he was intimately involved in the project long before any litigation was ever contemplated. Relying on *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, this court noted that the surprise was that the employee testified as an expert, not that he testified at all, and yet determined that Rule 220 disclosure was not needed.

In *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 610 N.E.2d 77, the Illinois Supreme Court reconsidered *Tzystuck* and referred to this court's opinion in *Smith*. The appropriate test for determining if an expert witness has been "retained" as such has been restated thusly:

> "[T]he question of whether a witness must be disclosed as an expert under Rule 220 depends on the expert's relationship to the case. If the expert is intimately involved in the underlying facts giving rise to the litigation and he would reasonably be expected to form an opinion through that involvement, then disclosure is not required. In such a case, the opposing party is unlikely to be surprised by the testimony. On the other hand, where the expert's contact with the case is slight, or where the opinion rendered is unrelated to the expert's involvement in the

case, then disclosure is required." (*Wakeford*, 154 Ill. 2d at 549, 610 N.E.2d at 80.)

In the absence of an abuse of discretion, the trial court's sanction for noncompliance with Rule 220 will not be overturned. *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 913, 588 N.E.2d 1193, 1213.

■ In this case, there was no abuse of discretion since the opinions held by Schoppet were not formulated exclusively as a result of his working for defendant on this project, but as a result of his working with a number of clients in the construction industry over a period of several years. Defendant also alludes to the fact that the trial court did not order a schedule of discovery and disclosure of experts. In *Barth v. Reagan* (1990), 139 Ill. 2d 399, 418, 564 N.E.2d 1196, 1205, the Illinois Supreme Court rejected the argument that there cannot be a Rule 220 violation without court-ordered discovery. Cases involving treating physicians are inapposite and are not precedent for this case. Moreover, if Rule 220 has any significance at all, it is important for the courts to discontinue the erosive process. See Chapman, *Jaws XVI: The Exceptions That Ate Rule 220*, 26 J. Marshall L. Rev. 189 (1992).

The next issue is whether the trial court erred by barring the opinion testimony of Walter J. Diestelhorst, owner and chief operating officer of defendant, for the failure of defendant to disclose that witness pursuant to Rule 220. Defendant did not include in its post-trial motion any allegation regarding the trial court's rulings on plaintiff's objection to Diestelhorst's testimony. The failure to specify an objection to a trial court's ruling in a post-trial motion waives that issue for purposes of appeal. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349-50, 415 N.E.2d 337, 339-40.) In addition, defendant has only a three-sentence argument with regard to this issue and cites no legal authority in violation of Illinois Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). Finally, defendant presumes the trial court ruled that Diestelhorst's testimony was inadmissible based on Rule 220. However, this is not supported by the record.

■ When Diestelhorst testified that other contractors charge 15% to take care of overhead; plaintiff's attorney stated, "I have got to move to strike," and the trial judge ruled, "The reference as to what other people charge and so forth, that evidence is stricken and should be disregarded by the jury." Defendant did not ask for a clarification of the trial judge's evidentiary ruling. Admissibility of evidence is a matter within the trial judge's discretion, and the ruling of the trial court will not be overturned unless it is an abuse of discre-

tion. (*Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 68, 573 N.E.2d 279, 292.) Even if defendant had properly preserved the issue for review, defendant has failed to demonstrate an abuse of discretion since the basis for the trial court's ruling may well have been proper without reference to Rule 220.

■ The next issue is whether the trial court erred by allowing into evidence testimony concerning defendant's contract with the State of Illinois and Macoupin County because any relevance it might have had was outweighed by its prejudicial impact on defendant. Neither party cites any legal authority in violation of Supreme Court Rules 341(e)(7) and (f). (134 Ill. 2d Rules 341(e)(7), (f).) Arguments without citation of authority are waived on appeal. (*First National Bank v. Country Mutual Insurance Co.* (1988), 175 Ill. App. 3d 860, 869, 530 N.E.2d 521, 527.) Since an appellant has the burden of persuasion on appeal, the failure to cite authority is more damaging to defendant in this case. In addition, the defendant's argument is without merit.

At trial, defendant objected to evidence relating to defendant's contract with IDOT and Macoupin County on the grounds that it was not material, not relevant, and prejudicial. A litigant is entitled to present evidence which is relevant and material to that party's theories of the case. (*Haffa v. Haffa* (1969), 115 Ill. App. 2d 467, 474, 253 N.E.2d 507, 511.) Evidence offered to prove a proposition which is in issue or which is probative of a matter in issue is material. (*Migliore v. County of Winnebago* (1974), 24 Ill. App. 3d 799, 803, 321 N.E.2d 476, 480.) Offered evidence is considered relevant if it tends to prove a matter in controversy (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 519, 468 N.E.2d 1228, 1235) or, stated another way, renders a matter in issue more or less probable in light of logic and experience (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473, 473 N.E.2d 1322, 1334). Materiality relates to the propriety of the proposition to be established, whereas relevancy relates to the propriety of the proof to establish that proposition. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.1, at 113 (4th ed. 1984).) However, evidence which is material and relevant may be so prejudicial that it may, nevertheless, be inadmissible. The contract of a party with a third person may be offered as evidence of the terms of a disputed contract between the parties if, in the trial court's discretion, the probative value outweighs the risk of confusion and waste of time. *Citizens National Bank v. Morman* (1979), 78 Ill. App. 3d 1037, 1044, 398 N.E.2d 49, 55-56.

It was plaintiff's theory in this trial that the difference between what defendant was charging the State and what defendant was to pay plaintiff on each pay item as provided in the two contracts constituted defendant's compensation for overhead costs and that defendant was not entitled to charge an additional 10% to the actual labor cost to cover overhead. This proposition sought to be proved by plaintiff is material to the question of what plaintiff was entitled to recover under the subcontract of the parties, and the evidence of the State contract is relevant to the issue as it is probative of whether the parties' subcontract allowed for defendant to charge plaintiff 10% of the labor costs for overhead. There was no abuse of discretion in admitting this evidence.

■■ The fourth issue is whether the trial court improperly refused to give the jury the following instruction: "Contract language is to be given its clear meaning if clarity is present, but ambiguities or uncertainties are to be resolved against the party creating them." This question also related to the arguable inclusion of a 10% charge for overhead in the "actual cost" for labor.

Defendant concedes that the determination of whether a written contract is ambiguous is a question of law (*Lukas v. Lightfoot* (1985), 131 Ill. App. 3d 566, 568, 476 N.E.2d 1, 2) and such a finding by the trial court may be reviewed independent of the trial court's judgment. (*Transcraft Corp. v. Anna Industrial Development Corp.* (1991), 223 Ill. App. 3d 100, 103, 584 N.E.2d 1033, 1035.) It is defendant's position that, although the words "actual cost" in the last paragraph of article 1 of the subcontract are clear and unambiguous on their face, there is a latent ambiguity.

> "It is well settled under Illinois law that a contract is considered ambiguous when its terms can reasonably be interpreted in more than one way. (*J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 551 N.E.2d 340; *In re Estate of Chaitlen* (1989), 179 Ill. App. 3d 287, 534 N.E.2d 482; *Lenzi v. Morkin* (1983), 116 Ill. App. 3d 1014, 452 N.E.2d 667.) However, when the contract terms are clear and unambiguous, the intent of the parties must be discerned only from the language used in the contract itself. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 461 N.E.2d 1031.) Language in a contract is not rendered ambiguous simply because parties do not agree upon its meaning. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 527 N.E.2d 897.) When contract terms are clear and unambiguous, they must be given their ordinary and natural meaning.

*Susmano v. Associate Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 422 N.E.2d 879." (*Continental Mobile Telephone Co. v. Chicago SMSA Limited Partnership* (1992), 225 Ill. App. 3d 317, 322-23, 587 N.E.2d 1169, 1173.)

Courts should refrain from rewriting contracts under the guise of interpretation. *Jewel Cos. v. Serfecz* (1991), 220 Ill. App. 3d 543, 549, 581 N.E.2d 186, 190.

The instruction that defendant sought to be given was based on the general principle of law that ambiguous language in a contract is construed against the drafter of the language. (*First National Bank,* 175 Ill. App. 3d at 866, 530 N.E.2d at 525.) However, only if the contract language is determined by the trial court to be ambiguous is a question of fact as to what the parties to the contract actually intended raised for the jury. See *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288-89, 565 N.E.2d 990, 994.

The subcontract was not ambiguous and, therefore, the trial court properly rejected defendant's tendered instruction. In addition, although a party is entitled to have the jury instructed as to its theory of the case if the instruction is supported by evidence, the determination of whether to give an instruction and its form are matters within the discretion of the trial court. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085, 1093.) In *Chakos v. Illinois State Toll Highway Authority* (1988), 169 Ill. App. 3d 1018, 1027, 524 N.E.2d 615, 621-22, the court stated:

> "Instructions should concisely and comprehensively provide the jury with the issues, principles of law and necessary facts to support a verdict. (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 508, 394 N.E.2d 1273; see *Pappas v. Peoples Gas Light & Coke Co.* (1953), 350 Ill. App. 541, 546, 113 N.E.2d 585.) Instructions as a whole and in series should be clear enough not to mislead while fairly and accurately stating the law. (*Grover,* 76 Ill. App. 3d at 508.) Supreme Court Rule 239(a) (107 Ill. 2d R. 239(a)), requires that non-IPI instructions be concise, impartial and free from argument. (*Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 501, 470 N.E.2d 1163.) An accurate instruction may not be used if misleading or argumentative. (*Gordon,* 128 Ill. App. 3d at 501.)"

In *Reilly Tar & Chemical Corp. v. Lewis* (1942), 326 Ill. App. 84, 95, 61 N.E.2d 290, 296, the court determined that it was misleading and confusing to give an instruction that a written agreement was to be construed against the party for whom or on whose behalf it was pre-

pared and if it was ambiguous the jury was to adopt a construction " 'more favorable' " to the defendant. The instruction in *Reilly Tar* is an incorrect statement of the law.

The instruction in the case at bar does not identify precisely which language in the subcontract the jury is to consider, and it leaves an opportunity for the jury to find ambiguities, even though it is the function of the trial court to determine if an ambiguity exists. It would be improper for the instruction to authorize the jury to search the entire subcontract for possible ambiguities. The party "creating" the ambiguity might not be the drafter of the instrument. The rejection of this instruction was proper.

■■ The fifth issue is whether plaintiff was not entitled to any interest under the subcontract between the parties because plaintiff prevented defendant from getting paid for the job by filing a mechanics' lien. Defendant cites no case law, citing only section 23 of the Act. It is defendant's contention that, since plaintiff filed a lien against project funds pursuant to this section of the Act, and D.C. Turner Construction Company (Turner) also filed a lien because of a dispute between plaintiff and Turner, funds which would have been available to defendant to pay plaintiff were properly withheld by the State and, therefore, plaintiff should not be entitled to interest under the subcontract as a matter of law. Defendant does not question the provision for interest in the contract.

There is nothing in section 23 of the Act which suggests plaintiff is not entitled to the contractual interest by reason of filing the lien and defendant has cited no cases which have reached that result. Defendant has failed to prove that the amount withheld by the State was more as a result of the notice of Turner's lien than it would have been had only plaintiff filed a notice of lien. The fact Turner also filed a lien has no bearing on the outcome of this issue since plaintiff's lien had not yet been removed before trial. Either lien would have prevented payment, and it could have been argued that had defendant paid plaintiff what plaintiff was rightfully owed, plaintiff could settle with Turner. Moreover, Turner's lien had been removed, as a waiver of Turner's lien was produced at trial. Therefore, it cannot be said that the defendant's withholding of payment to plaintiff was the result of the dispute between plaintiff and Turner.

Moreover, while the subcontract referred to the final calculation of the State in establishing the method of calculating how much the defendant should pay plaintiff, there is no requirement in the subcontract that only the funds paid to defendant by the State for this project are available for defendant to pay plaintiff. Indeed, defendant

bankrolled the project, and it is a reasonable inference that defendant had funds otherwise available to pay plaintiff in order to get the lien removed.

Interest is allowed in mechanics' lien actions. *McDonald v. J.W. Patterson & Co.* (1900), 186 Ill. 381, 386, 57 N.E. 1027, 1029; *Sorg v. Crandall* (1908), 233 Ill. 79, 105, 84 N.E. 181, 192.

In this case, the defendant argues that the filing of the mechanics' lien prohibits plaintiff, as a matter of law, from collecting interest under the subcontract. The *McDonald* and *Sorg* cases indicate that the law has long been otherwise.

■ The final issue is whether the evidence so overwhelmingly favored defendant that the trial court should not have allowed the verdict to stand or, in the alternative, whether the jury's verdict was against the manifest weight of the evidence. Again, defendant cites no authority in violation of Rule 341(e)(7).

A judgment notwithstanding the verdict (judgment *n.o.v.*) may be entered only if "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.)

> "The court has no right to enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. See *Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1087; *Ziegert v. South Chicago Community Hospital* (1981), 99 Ill. App. 3d 83, 91; *Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 947.
>
> Alternatively, '[o]n a motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence.' (*Mizowek*, 64 Ill. 2d at 310; accord *Junker v. Ziegler* (1986), 113 Ill. 2d 332, 339-40.) 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' *Villa*, 202 Ill. App. 3d at 1089; accord *Topp v. Logan* (1990), 197 Ill. App. 3d 285, 298; *Monier v. Winkler* (1987), 158 Ill. App. 3d 724, 729." *Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13.

Without restating the evidence, it is clear from a thorough review of the record that defendant was not entitled to a judgment *n.o.v.* It is also clear there was sufficient evidence in the record to support the jury's verdict in favor of plaintiff.

Accordingly, the judgment of the circuit court of Macoupin County is affirmed.

Affirmed.

KNECHT, J., concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I fully concur, I write separately to express my concern about the time and effort judges and lawyers continue to spend regarding Rule 220. I am fully aware of the goals the Supreme Court of Illinois had in mind when it promulgated Rule 220—elimination of surprise, easier and more effective preparation for trial, better utilization of discovery procedures—but the volume of litigation Rule 220 has caused reveals that it has not achieved these goals.

I suggest that the time has come for the court to rethink this entire subject and to provide a rule regarding expert testimony which is clear, easy to understand, and easy to apply. The rule I propose has the attractiveness of being a "bright-line" rule: Before a party may elicit an expert opinion at trial from a witness that party has called to testify, that party must disclose in advance of trial (at whatever the supreme court determines that point to be) the existence of the expert witness and the nature of the testimony the expert witness will be expected to give. A party's failure to so disclose, absent the most exigent circumstances, would prohibit that witness from providing any expert testimony.

The beauty of this rule is in its simplicity and ease of use. It would no longer matter (1) what the expert witness' connection might be to the parties, (2) whether the expert witness had been retained "in anticipation of litigation or preparation for trial" (134 Ill. 2d R. 220(a)(2)), or (3) whether the expert witness was a treating physician or an examining physician.

I further suggest that my proposed rule is consistent with "real world" experience: lawyers do not call expert witnesses to testify "on a hunch." Instead, almost without exception a lawyer has talked to her expert witness well in advance of trial and knows precisely what expert opinion she wishes to elicit from that witness.

In my judgment, most of the problems associated with the application of Rule 220 arise from lawyers' playing games with the rule by trying to utilize one of the rule's exceptions so they can conceal their intent to elicit an expert opinion. To end the constant litigation and waste of resources caused by such conduct and to fulfill the original goals of the supreme court when it promulgated Rule 220, that rule should be amended to require absolute disclosure well in advance of trial of all witnesses who will be asked to render an expert opinion, without exception.

Only two classes of lawyers will be hurt if the supreme court adopted this proposed rule: (1) lawyers who through their "gamesmanship" attempt to withhold the identity of their experts until the last possible moment (sometimes even until the trial itself) to obtain a tactical advantage, and (2) lawyers too stupid to know that they need an expert witness for their case or too negligent to seek one out in a timely fashion. Neither of these classes is deserving of the supreme court's protection or concern.