FIFTH DIVISION
 February 7, 1997

No. 1-95-3851
 
CONTINENTAL CASUALTY COMPANY, ) Appeal from the
McDONNELL DOUGLAS FINANCE ) Circuit Court of
CORPORATION, UNITED SERVICES ) Cook County.
AUTOMOBILE ASSOCIATION, and )
USAA CASUALTY INSURANCE COMPANY,)
 )
 Plaintiffs-Appellees, ) No. 87 CH 9106
 )
v. )
 )
COMMONWEALTH EDISON COMPANY, ) The Honorable
 ) Dorothy Kirie Kinnaird,
 Defendant-Appellant. ) Judge Presiding.

 JUSTICE HOURIHANE delivered the opinion of the court:
 This case involves the issuance by Commonwealth Edison
(Edison) of 340,000 shares of 15% preferred stock and the
redemption of that stock by Edison on February 1, 1987. 
Plaintiffs, certain institutional investors, challenged the
redemption on several theories, and filed suit in the chancery
court seeking recision (count I), injunctive relief (count II),
declaratory relief (count III), damages for breach of contract
(count IV) and fiduciary duty (count V), and damages or
injunctive relief for violation of the Illinois Consumer Fraud
Act (count VI). 
 The trial court granted Edison's motion to dismiss the
complaint, pursuant to section 2-615 of the Code of Civil
Procedure. 735 ILCS 5/2-615 (West 1994). On appeal, we reversed
the dismissal of counts I through V finding that, at a minimum,
an ambiguity exists in the redemption provisions of the parties'
agreement which precluded conclusive determination of their
intent solely from the documents. We also affirmed dismissal of
count VI, holding that the Consumer Fraud Act did not apply to
this transaction. Continental Assurance Co. v. Commonwealth
Edison Co., 194 Ill. App. 3d 1085, 551 N.E.2d 1054 (1990).
 On remand, Edison moved for summary judgment which was
granted as to plaintiffs' claims for recision, injunctive relief,
and breach of fiduciary duty. Following a bench trial on the two
remaining counts for declaratory relief and for breach of
contract, the trial court found that Edison had breached the
parties' agreement and awarded $5,749,147.52 in damages. This
amount includes $2,774,452.52 as an equitable award of
prejudgment interest. 
 On appeal, Edison asserts that the trial court's damages
determination is not supported by the evidence, and that the
trial court lacked the authority to make an equitable award of
prejudgment interest.
 We affirm in part and reverse in part, and remand for
further proceedings.
 ANALYSIS
 I.
 We first consider Edison's argument that the trial court's
determination of damages is not supported by the evidence. It is
well settled that the determination of damages by a trial court
sitting without a jury will not be disturbed on review unless
contrary to the manifest weight of the evidence. Schatz v.
Abbott Laboratories, Inc., 51 Ill. 2d 143, 149 (1972); Moniuszko
v. Moniuszko, 238 Ill. App. 3d 523, 531, 606 N.E.2d 468 (1992);
In re Estate of Chaitlen, 179 Ill. App. 3d 287, 292, 534 N.E.2d
482 (1989). The law does not require absolute certainty as to
the amount of the damages. Rather, there need only be an
adequate basis in the record for the court's determination. 
Schatz, 51 Ill. 2d at 147-48; Moniuszko, 238 Ill. App. 3d at 531;
Chaitlen, 179 Ill. App. 3d at 292. 
 The record reveals that in 1982, in conjunction with the
financing and construction of several nuclear power plants,
Edison issued 340,000 shares of 15% preferred stock ("preference
stock") to certain institutional investors, plaintiffs here. The
stock was issued pursuant to a Purchase Agreement and Resolution
of Edison's Board of Directors. 
 Holders of the preference stock were entitled to annual
dividends of 15%, which was commensurate with the then prevailing
interest rates. The stock was also subject to a 5-year noncall
provision, as well as certain indemnity rights of the
shareholders and redemption rights of Edison. The trial court
specifically found that plaintiffs' decision to buy the stock was
dependent on the assumption that, for federal income tax
purposes, the dividends would be eligible for the "dividend
received deduction" (DRD) provided for under Section 243(a)(1) of
the Internal Revenue Code of 1954. 26 U.S.C.  243(a)(1). Under
the DRD, 85% of the dividends would be tax-free, resulting in an
after-tax yield of 13.965%. If, during the 5-year noncall
period, the holders of the stock lost the favorable tax treatment
under the DRD, the shareholders could seek indemnity from Edison
and Edison, in turn, had the right to redeem the stock at par. 
Edison could also redeem the stock at any time after the fifth
year for any reason upon payment of a 6.67% premium. Finally,
the agreements provided for a "sinking fund" redemption under
which Edison was required to redeem 20% of the issuance on each
of the sixth through tenth issuance anniversary dates, so that
the entire issuance would be redeemed at the end of the tenth
year. Edison had the option of doubling the amount of stock
redeemed on any of the mandatory redemption anniversaries. All
mandatory redemptions, including doubled redemptions, were at
par. 
 In 1986, interest rates dropped significantly and Edison
instituted a plan to redeem, cancel, refund or refinance every
obligation carrying a high interest rate, including the
preference stock. At the same time, the Tax Reform Act of 1986
became law. Among other things, the Act reduced the DRD from 85%
to 80%, effective January 1, 1987. See Pub. L. No. 99-514, 
611(a)(1), codified at 26 U.S.C.  243. Based on this reduction
in the DRD, on February 1, 1987, Edison redeemed the preference
stock. Significantly, because of the phase-in provisions of the
Tax Reform Act and a reduction in the general corporate tax rate
effective July 1, 1987, the preference stock would have produced
an after-tax yield in 1987 of 13.8%, a reduction of only .165%. 
 On remand, the trial court found that Edison's redemption
rights were limited by the requirement that it make a good faith
determination prior to redemption that the shareholders "suffered
a real and detrimental loss in the after-tax yield on the
dividends paid on the stock and not just a de minimis loss",
which Edison failed to do. Thus, the court found that Edison
clearly breached the Purchase Agreement. 
 Edison does not appeal this finding. Rather, it challenges
the trial court's determination that absent this breach, Edison
would have redeemed the preference stock in August, 1987. Edison
argues that the evidence establishes that Edison had in place a
comprehensive program to redeem high rate issuances at the least
cost to the company. Edison contends that the least cost
alternative was a "split redemption", under which Edison would
have redeemed 60% of the stock in August 1987 at a premium, and
the remaining 40% in August 1988 at no premium. Edison argues
that support for this position is found in the unrebutted
testimony of its treasurer, Dennis O'Brien, and former vice-
chairman, Wallace Behnke, Jr.
 As Assistant Treasurer in the mid-1980s, O'Brien testified
that he reviewed Edison's high-rate instruments to determine
whether such offerings could be redeemed. Decisions regarding
redemptions were made by the board on a purely economical basis. 
O'Brien further opined that had Edison not redeemed the
preference stock in February 1987, the company would have
redeemed 60% of the stock in August 1987 at a premium, and the
remaining 40% in February or August 1988 at par, as this would
have been the most economical. He also testified that Edison had
engaged in this sort of split-redemption strategy during the mid-
1980s when redeeming other high cost instruments. Significantly,
O'Brien did not commence work with Edison until August 1, 1987. 
He was not a member of the board, did not attend board meetings,
did not make recommendations directly to the board concerning
redemptions, and was not in the senior management loop with
respect to receiving strategic memoranda or minutes of board
meetings. His opinion as to what Edison would have done was not
based on any conversation with senior management who would have
participated in the decision-making process.
 At retirement in 1989, Behnke was vice-chairman and a member
of Edison's board. His duties as vice-chairman included overall
responsibility for the development of the company's strategic
planning. Various departments reported to Behnke, including
accounting, federal tax, purchasing, rates, and finance. Behnke
testified that Edison's strategy has been to minimize costs of
financing and to call and refund issues wherever it was clear
that such a refunding would lower the overall cost of capital,
and that the preference stock was no different.
 However, Behnke's own notes from the December 1986 and
January 1987 board meetings plainly indicate that only two
possible redemption dates were put before the board--February
1987 or August 1987. No evidence was offered that Edison's
management ever contemplated a split redemption for this
particular call, or that the possibility of redemption at a date
other than February or August 1987 was ever presented to or
considered by Edison's board. 
 A decision is against the manifest weight of the evidence if
the opposite conclusion is clearly evident or where the findings 
are unreasonable, arbitrary, or not based on evidence. Bazydlo
v. Volant, 164 Ill. 2d 207, 215 (1995). Based on the record
before this court, it cannot be said that the trial court's
determination that Edison would have redeemed the stock on the
only other date Edison's board actually considered is against the
manifest weight of the evidence. Accordingly, we affirm the
trial court's determination of damages based on redemption of
100% of the issuance in August 1987 at a premium of 6.67%. 
Because Edison does not challenge the court's calculations based
on an August 1987 redemption, we need not review those
calculations here.
 II.
 We next consider Edison's claim that the trial court was
without authority to make an equitable award of prejudgment
interest. Without elaboration, the trial court ruled that
prejudgment interest is appropriate and that the prime rate,
rather than the statutory rate, would apply. The court cited In
re Estate of Wernick, 127 Ill. 2d 61 (1989) and People ex rel.
Hartigan v. Illinois Commerce Commission, 148 Ill. 2d 348 (1992)
as authority for the award.
 Edison argues that there was no equitable cause of action
before the court upon which it could exercise its equitable
powers, since the claim underlying the declaratory action was, in
fact, a breach of contract. Edison further argues that an
equitable award of prejudgment interest conflicts with the
provisions of the Interest Act (815 ILCS 205/0.01 et seq. (West
1994)), which Edison asserts governs interest awards in breach of
contract cases.
 Plaintiffs counter that the trial court had before it claims
that were not solely legal in nature; that a court's equitable
powers are not, in any event, confined to cases sounding in
equity; that an award of prejudgment interest was an appropriate
means of compensating plaintiffs for the loss of use of funds
rightfully theirs; that the Interest Act does not preclude an
award of equitable prejudgment interest; and that interest could
have been awarded under the Interest Act.
 Generally, prejudgment interest is recoverable only where
contracted for or authorized by statute. Department of
Transportation v. New Century Engineering and Development Corp.,
97 Ill. 2d 343, 352 (1983); Ouwenga v. Nu-Way Ag, Inc., 239 Ill.
App. 3d 518, 526-27, 604 N.E.2d 1085 (1992); Richman v. Chicago
Bears Football Club, Inc., 127 Ill. App. 3d 75, 78, 468 N.E.2d
487 (1984); Cushman & Wakefield of Illinois, Inc. v. Northbrook
500 Ltd. Partnership, 112 Ill. App. 3d 951, 963, 445 N.E.2d 1313
(1983). However, "[i]n a proper case, equitable considerations
permit a court of equity to allow or disallow interest as the
equities of the case may demand." Groome v. Freyn Engineering
Co., 374 Ill. 113, 131 (1940). Our supreme court recently
explained the basis for an equitable award of prejudgment
interest:
 "The goal of proceedings sounding in equity
 is to make the injured party whole. The current
 trend being employed to accomplish this goal is to
 allow an award of interest on funds owing so that
 justice might be accomplished in each particular
 case. *** In Illinois, prejudgment interest may
 be recovered when warranted by equitable
 considerations, and disallowed if such an award
 would not comport with justice and equity. ***
 The rationale underlying an equitable award
 of prejudgment interest in a case involving a
 breach of fiduciary duty is to make the injured
 party complete by forcing the fiduciary to account
 for profits and interest he gained by the use of
 the injured party's money. [Citations.] The
 injured party is thus compensated for any economic
 loss occasioned by the inability to use his money. 
 Prejudgment interest in this context acts as a
 concept of fairness and equity and not as a
 sanction against the defendant. [Citation.]
 Fundamental principles of damages and compensation
 dictate that when money has been wrongfully
 withheld the victim receive interest for the
 wrongdoer's retention of his money." In re Estate
 of Wernick, 127 Ill. 2d 61, 86-87 (1989).
 Plaintiffs argue that the same rationale set forth in
Wernick should apply here. We disagree. We first observe that
although the instant case proceeded before a court of equity, the
matter was nonetheless an action at law. At the time of trial,
plaintiffs' equitable claims had all been rejected, and the only
claims remaining were for declaratory judgment and breach of
contract. Actions under the declaratory judgments statute (735
ILCS 5/2-701 (West 1994)) are neither legal nor equitable in
nature. Rather, they are sui generis and the judgment, decree or
order take their character from the nature of the relief
declared. Albright v. Phelan, 2 Ill. App. 3d 142, 146, 276
N.E.2d 1 (1971). Here, plaintiffs sought a declaration relative
to their rights under the Purchase Agreement and the court
declared that "the exercise by defendant Commonwealth Edison
Company of the special redemption right contained in the $15.00
Preference Stock was a breach of the Purchase Agreement." Thus,
plaintiffs' inclusion of a declaratory judgment count does not
transform what is essentially a legal claim into an equitable
one. See Crerar Clinch Coal Co. v. Board of Education, 13 Ill.
App. 2d 208, 218, 141 N.E.2d 393 (1957) (court rejected argument
in declaratory judgment action that because prayer for relief
asked not only for declaration of rights under contract, but also
for an accounting and payment of moneys, plaintiff's action
required the application of equitable principles, particularly
the doctrine of unjust enrichment).
 While it is true, as plaintiffs assert, that every circuit
court judge has equitable powers (Chrysler Credit Corp. v. M.C.R.
Leasing Co., 114 Ill. App. 2d 43, 49, 251 N.E.2d 648 (1969)), and
that equitable relief is available even where a case is pending
in the Law Division (see Kaplan v. Keith, 60 Ill. App. 3d 804,
809, 377 N.E.2d 279 (1978)), these observations merely underscore
the principle that the character or nature of the court and the
relief available to a plaintiff are derived from the substance of
the claim before it. In other words, the availability of
equitable relief is not necessarily precluded merely because a
case is proceeding in the Law Division, nor is equitable relief
automatically awarded merely because a case is proceeding in the
Chancery Division. Rather, and as already stated, it is the
substance of the claim that determines the appropriate relief and
the nature of the court. Here, the "substance" of the claim is a
breach of contract, a classic action at law. Eyman v. McDonough
District Hospital, 245 Ill. App. 3d 394, 397, 613 N.E.2d 819
(1993). Thus, the court was not sitting in equity.
 Significantly, Illinois courts have declined to apply the
rule governing equitable awards of prejudgment interest to cases
at law, notwithstanding that an injured party who is eventually
compensated may suffer detriment from the inability to use the
money from the date of loss to the date of compensation. See
Wilson v. Cherry, 244 Ill. App. 3d 632, 636-40, 612 N.E.2d 953
(1993) and cases cited therein. See also Kerasotes v. Estate of
Kerasotes, 238 Ill. App. 3d 1020, 1030-32, 605 N.E.2d 643 (1992)
(court was "sitting in equity" and could award prejudgment
interest where former partner's action for equitable accounting
and existence of fiduciary relationship among the parties
provided a sufficient basis to invoke the equitable jurisdiction
of the court).
 Plaintiffs maintain nonetheless that Wernick need not be
read so narrowly and that under Steward v. Yoder, 86 Ill. App. 3d
223, 408 N.E.2d 55 (1980), Kozak v. Retirement Board of the
Firemen's Annuity and Benefit Fund of Chicago, 128 Ill. App. 3d
678, 470 N.E.2d 1293 (1984), Cummings v. Beaton & Associates,
Inc., 249 Ill. App. 3d 287, 618 N.E.2d 292 (1992), People ex rel.
Hartigan v. Illinois Commerce Commission, 148 Ill. 2d 348 (1992),
and other decisions, the trial court properly exercised its
discretion. However, none of the cases cited by plaintiffs opens
the door for an equitable award of prejudgment interest in an
action for breach of contract.
 In Steward, a breach of contract case, this court reversed
an equitable award of interest and applied the rule that
"prejudgment interest is allowable only where it is so agreed by
the parties or where permitted by statute." Steward, 86 Ill.
App. 3d at 225. We also observed that the element of bad conduct
necessary for either a statutory or equitable award of interest
was not present.
 Kozak involved an appeal by the Retirement Board of the
Firemen's Annuity and Benefit Fund of Chicago from an order of
the circuit court requiring the board to pay prejudgment interest
on certain judgments for retroactive widows' annuity payments. 
We affirmed an equitable award of interest, noting that such
awards are discretionary "in an equitable proceeding", and that
the board deliberately concealed a change in statutory
construction from plaintiff. Kozak, 128 Ill. App. 3d at 682. In 
Finley v. Finley, 81 Ill. 2d 317, 331 (1980), on which the Kozak
decision is based, our supreme court held that because a divorce
proceeding was in the nature of a chancery proceeding, it would
be governed by the rules applicable thereto, and an equitable
award of interest was appropriately assessed on past-due periodic
support payments. Thus, Kozak cannot be construed as authority
for equitable awards of prejudgment interest in cases which are
not in the nature of an equitable proceeding.
 In Cummings, we affirmed an award of prejudgment interest,
under the interest statute, for breach of a settlement agreement,
and rejected plaintiffs' claim that the prime rate, rather than
the statutory rate, should apply. Although we stated that, under
Wernick, there was "some merit" to plaintiffs' plea for the
higher interest rate, we ultimately distinguished the two cases. 
Unlike Wernick, the defendant in Cummings did not stand in a
fiduciary relationship to the plaintiff and the statutory
interest award was not based on the vexatious delay provisions of
the interest statute. 
 Finally, in Hartigan v. Illinois Commerce Commission, our
supreme court affirmed an equitable award of prejudgment interest
at prime on amounts the utility collected pursuant to illegal
rates. Our supreme court agreed with the circuit court that
Edison should not be allowed to "amass approximately three
hundred million dollars of illegal rates over three years and
then repay it back at less than passbook rates." Hartigan, 148
Ill. 2d at 406. In examining the refund order and the award of
interest, our supreme court focused on the court's equitable
powers to fashion an appropriate remedy when none is provided
under the Public Utilities Act (Hartigan, 148 Ill. 2d at 393-98)
and equity's goal of making the utility customers whole following
collection of illegal rates (Hartigan, 148 Ill. 2d at 405-7). 
Plainly, the trial court here was not faced with the same
considerations.
 At most, Steward, Kozak, Cummings, and Hartigan suggest that
some element of bad conduct must be present before an equitable
award of prejudgment interest will be made, although Wernick
makes it clear that equitable awards of interest are not
sanctions. However, these cases cannot reasonably be construed
as authority for an equitable award of prejudgment interest in a
case for breach of contract. We note that the Wernick opinion is
framed in terms of the goal of "proceedings sounding in equity"
and we decline to extend the court's rationale to cases sounding
in law. Thus, in the case sub judice, the trial court was
without authority to enter an equitable award of prejudgment
interest. Accordingly, we need not consider whether the award
constituted an abuse of discretion. See Wernick, 127 Ill. 2d at
87 (whether equitable circumstances exist which support an
equitable award of interest is a matter within the sound
discretion of the trial court and will not be reversed on review
absent an abuse of discretion).
 We believe our decision also comports with the Interest Act
(Act) which, inter alia, sets forth a limited number of
circumstances in which, absent an agreement between the parties,
interest will be allowed on moneys after they become due. 815
ILCS 205/0.01 et seq. (West 1994). Section 2 of the Act
specifically provides for allowance of interest at the rate of 5%
per annum "for all moneys after they become due on any ***
instrument of writing." 815 ILCS 205/2 (West 1994). A contract
is an "instrument of writing" under the Act (Michigan Avenue
National Bank v. Evans, Inc., 176 Ill. App. 3d 1047, 1061, 531
N.E.2d 872 (1988)) and the parties concede that the Act applies
to this breach of contract action. However, interest will only
be awarded under the Act where the amount due is fixed or easily
computed. Couch v. State Farm Insurance Co., 279 Ill. App. 3d
1050, 1054, 666 N.E.2d 24 (1996); Bank of Chicago v. Park
National Bank, 266 Ill. App. 3d 890, 900, 640 N.E.2d 1288 (1994). 
It would be a truly anomalous result if, having satisfied the
requirements under the Act, a plaintiff suing on a written
contract was awarded prejudgment interest at 5%, whereas a
plaintiff who could not satisfy the statutory requirements could
nonetheless seek and receive an award of prejudgment interest and
at a rate in excess of the statutory amount. Similarly, the Act
would be rendered meaningless if a breach-of-contract plaintiff
could choose between statutory interest and equitable interest. 
For these further reasons, we believe that the trial court here
was without authority to make an equitable award of prejudgment
interest.
 We are mindful that, historically, prejudgment interest was
not allowable at common law, and we are reluctant to expand the
concept beyond the narrow provisions of the Interest Act and what
one court has termed the "'equitable' safety valve" carved out by
Illinois courts. See Needham v. White Laboratories, Inc., 847
F.2d 355, 361 (7th Cir. 1988).
 Plaintiffs contend that an award of prejudgment interest
need not be limited by the provisions of the Interest Act, and
that Wernick permits the courts to apply the prime rate rather
than the statutory rate. See Cummings, 249 Ill. App. 3d at 319
("Wernick does open the way for courts to apply the prime rate as
a means of better compensating injured parties"). Wernick only
provides that where an equitable award of prejudgment interest is
otherwise appropriate, the court need not look to the prejudgment
interest statute to establish a sufficient rate. Wernick does
not provide authority to disregard the express provisions of the
Act. Thus, prejudgment interest on moneys due on an instrument
of writing is capped at 5%. To the extent Cummings can be read
to provide otherwise, we decline to follow it. See First Federal
Savings & Loan Association of Chicago v. Walker, 91 Ill. 2d 218,
227 (1982) (a court of equity has no power to dispense with the
plain requirements of a statute); 601 West 81st Street Corp. v.
City of Chicago, 129 Ill. App. 3d 410, 418, 472 N.E.2d 827 (1984)
("the equitable powers of a court may not be exercised to direct
a remedy in contradiction to the plain requirements of a
statute"). 
 As to the applicability of the Act to the circumstances
present here, there is nothing in the record to suggest that the
trial court considered this matter. Clearly, the court was not
foreclosed from making an award of prejudgment interest under the
Act, provided the statutory requirements are met. We therefore
remand the matter to the trial court for further proceedings to
determine whether a statutory award of prejudgment interest is
appropriate.
 For the reasons set forth above, we affirm the trial court's
damages determination based on an August 1987 redemption, reverse
the award of prejudgment interest, and remand the matter for
further proceedings consistent with this ruling.
 AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED.
 McNULTY, P.J., AND GORDON, J., concur.